UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

               Plaintiff,

      v.

GEORGE MOSES,

               Defendant.

_____

REPORT & RECOMMENDATION

19-CR-6074EAW

## PRELIMINARY STATEMENT

By Order of Hon. Elizabeth A. Wolford, United States District Judge, dated May 9, 2019, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 14).

On May 9, 2019, the grand jury returned a two-count indictment against defendant George Moses ("Moses").  (Docket # 12).  Count One charges Moses with making false statements to FBI agents on July 25, 2018, in violation of 18 U.S.C. § 1001(a)(2).  (*Id.*). Count Two charges Moses with making false statements to FBI agents on July 31, 2018, also in violation of 18 U.S.C. § 1001(a)(2).  (*Id.*).

Currently pending before the Court for report and recommendation is Moses's motion to dismiss Count Two of the indictment.  (Docket # 18).  Moses's sole contention is that the government's prosecution of Moses for false statements he made to FBI agents at a proffer session on July 31, 2018, violates the terms of the proffer agreement pursuant to which Moses

made those statements.  (Docket ## 19, 23).  For the reasons discussed below, I recommend that the District Court deny Moses's motion.

## REPORT & RECOMMENDATION

On July 31, 2018, Moses spoke to FBI agents during a proffer session (the "Proffer Session") pursuant to terms specified in a proffer agreement signed by Moses, his attorney, and Assistant United States Attorney Richard A. Resnick (the "Proffer Agreement" (Docket # 20-2)).  The government has since confirmed that the false statements specified in Count Two of the indictment were statements Moses made during the Proffer Session.  (Docket # 20 at ¶ 2).

### 1.  Terms of the Proffer Agreement

The Proffer Agreement "memorialize[d] the representations made" by the government to Moses "as to the use that c[ould] be made of information [Moses] provide[d]" during the Proffer Session, "the purpose of [which was to] allow[] the government to assess [Moses's] value as a potential witness."  (Docket # 20-2 at 1).  Moses agreed "to provide complete and truthful information regarding any and all criminal matters of which [he] may have [had] knowledge."  (*Id.* at ¶ 1).  The government agreed, among other things, "not to use any statements . . . provided by [Moses] <u>directly</u> against [him], in any proceeding, including any sentencing proceeding, *except as provided in* paragraphs 5, 6, and 7 of this agreement."  (*Id.* at ¶ 4 (first emphasis in original, second emphasis supplied)).

The exceptions referenced in paragraph four, which identify the circumstances under which the government is permitted to use Moses's proffered statements directly against him, provide as follows:

> 5. Any statements . . . provided by the witness may be offered to impeach the witness' testimony in any subsequent proceeding. Furthermore, any statements . . . provided by the witness may be used against the witness in a prosecution for perjury, making false statements or obstruction of justice.
>
> 6. Any statements . . . provided by the witness may be offered by the government as substantive evidence to **rebut**, directly or indirectly, any evidence offered or elicited, or factual assertions made, by or on behalf of the witness at any stage of a criminal proceeding, including, but not limited to bail hearings, trial and sentencing.
>
> 7. In the event the witness knowingly provides false or misleading information, or withholds material information, the government reserves the right to use any statements . . . provided pursuant to this agreement <u>directly</u> against the witness for any purpose deemed proper by the government. If the witness opposes the direct use of such statements . . . [,] the witness shall have the burden to move to suppress such statements . . . pursuant to Fed. R. Crim. P. 12. Upon the filing of such motion, the government shall have the burden of proof by a preponderance of the evidence.

(*Id.* at ¶¶ 5, 6, 7 (emphasis in original)).

## 2. **Analysis**

Moses's principal argument is that none of the articulated exceptions permits the government to obtain an indictment and prosecute Moses based on false statements made at the Proffer Session. (Docket ## 19 at 4-11; 23 at 2-6). Alternatively, Moses contends that the terms of the Proffer Agreement, as they concern the government's ability to use Moses's proffered statements as the basis for a false statements charge, are ambiguous and should be construed against the government. (Docket ## 19 at 11-12; 23 at 6).

The government maintains that the second sentence of paragraph five – analysis of which is noticeably absent from Moses's moving papers – is "concise and unambiguous" and "permits the government to use statements made by [Moses] directly against him in a prosecution for perjury and making false statements." (Docket # 22 at 2). In addition, the

government argues that the exception specified in paragraph seven also permits the prosecution

of Moses for false statements made during the Proffer Session.  (*Id.* at 3-4).

"Pre-trial agreements, such as . . . proffer agreements, are interpreted according to

principles of contract law."  *United States v. Liranzo*, 944 F.2d 73, 77 (2d Cir. 1991); *United*

*States v. Gomez*, 210 F. Supp. 2d 465, 475 (S.D.N.Y. 2002) ("[a] proffer agreement is a contract

that should be enforced in accordance with principles of contract law").  "As a general matter,

the objective of contract interpretation is to give effect to the expressed intentions of the parties,"

such that when "a written agreement . . . is complete, clear and unambiguous on its face[, it]

must be interpreted according to the plain meaning of its terms."  *Law Debenture Trust Co. of*

*New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (alterations, citations, and

quotations omitted); *see also United States v. Rosemond*, 841 F.3d 95, 107 (2d Cir. 2016) ("[l]ike

all contracts, proffer agreements must be interpreted 'to give effect to the intent of the parties'")

(quoting *United States v. Barrow*, 400 F.3d 109, 117 (2d Cir. 2005)).  "Where the language of a

contract is unambiguous, the parties' intent is discerned from the four corners of the contract."

*United States v. Liranzo*, 944 F.2d at 77.  Where the language of a proffer agreement is

ambiguous, however, the ambiguity must be resolved against the government "because

agreements between a defendant and the [g]overnment are unique contracts in which special due

process concerns for fairness and the adequacy of procedural safeguards obtain."  *United States*

*v. Chaparro*, 181 F. Supp. 2d 323, 330 (S.D.N.Y. 2002) (citations and quotations omitted); *see*

*also United States v. Gomez*, 210 F. Supp. 2d at 474 n.4 ("[a]ny ambiguities in a proffer

agreement must be resolved against the [g]overnment").

I recommend that the District Court deny Moses's motion to dismiss based on the

clear and unambiguous language of the Proffer Agreement.  Specifically, I find that the plain

language of the second sentence of paragraph five of the Proffer Agreement permits the

government to charge Moses with making false statements at the Proffer Session.[1]  That

provision, which is the only sentence in the agreement that expressly references the use of

proffered statements in a prosecution for making false statements, explicitly allows the

government to use "any statement . . . provided by the witness . . . against the witness in a

prosecution for . . . making false statements."  (*See* Docket # 20-2 at ¶ 5).

        In Moses's view, paragraph five relates in its entirety and solely to the

government's right to use proffered statements to impeach the witness at a subsequent

proceeding.  (Docket ## 19 at 6 ("[t]he essence of this paragraph is allowing the proffered

statements to be used not as substantive evidence but as evidence to contradict future testimony

or statements of the profferer"); 23 at 3 ("the first sentence of . . . paragraph [five] makes clear

that the exception to paragraph [four] addressed in paragraph [five] is use 'to impeach'")).  In

support of his position, Moses urges that use of the word "furthermore" demonstrates that the

second sentence "is clearly a continuation of the first sentence of paragraph [five] dealing with

the subject of impeachment use of proffered statements," and thus permits impeachment use in a

prosecution for perjury, making false statements, or obstruction of justice.  (Docket # 23 at 3

(citing the Merriam-Webster Dictionary's definition of "furthermore" as "in addition to what

---

[1]  Because my report and recommendation to the District Court rests on the plain language of paragraph five (which refers explicitly to use of proffered statements in prosecutions for making false statements), I need not resolve whether the exception specified in paragraph seven also permits the government to use Moses's proffered statements as a basis for the false statements charge in Count Two.  Paragraph seven provides that any statements provided by the witness pursuant to the Proffer Agreement may be used directly against the witness for any "purpose deemed proper by the government" – a seemingly broader exception than that reflected in the second sentence of paragraph five – in the event that the witness "knowingly provides false or misleading information, or withholds material information."  (Docket # 20-2 at ¶ 7).  Use of proffered statements as the basis for a false statements charge would appear to constitute a "purpose deemed proper by the government," and indeed the government has represented as much in its motion papers.  (*See* Docket # 22 at 3).  Paragraph seven also affords the witness the right to move to suppress the proffered statements if the witness opposes the use of the statements against him or her.  (Docket # 20-2 at ¶ 7).  Moses has not moved for suppression.

precedes")).  He argues, "the second sentence provides that in addition to use of proffered statements for impeachment of 'testimony' at a 'subsequent proceeding' addressed in the first sentence, impeachment for the additional purposes set forth in the second sentence are also permitted."  (*Id.*).

Moses's interpretation of paragraph five – that it relates only to impeachment use – is belied by its plain language, as well as a common-sense construction of the two-sentence paragraph as a whole.  Although the first sentence of paragraph five permits the government to use statements made during a proffer session "to impeach the witness' testimony in any subsequent proceeding," the term "impeachment" does not appear anywhere in the second sentence of paragraph five.  (Docket # 20-2 at ¶ 5).  Moreover, Moses misreads the significance of the use of the word "furthermore."  Moses reads "furthermore" to signify a "clear[] continuation of the first sentence of paragraph five dealing with the subject of impeachment use of proffered statements" (Docket # 23 at 3); in fact, in indicates the opposite.  "Furthermore" means "in addition" or "besides," and may be "used to introduce a fresh consideration in an argument."  *Furthermore*, THE NEW OXFORD AMERICAN DICTIONARY (2001).  In other words, use of the transition "furthermore" in paragraph five signals or reflects the articulation of a permitted use by the government of proffered statements that is "in addition to," or "besides," the use for impeachment described in the first sentence.

Moses strains to acknowledge the commonly accepted meaning of the word "furthermore" to connote "in addition" by contending that the purpose of the second sentence is not to memorialize an additional permitted use by the government of a witness's proffered statements, but rather to memorialize an "additional purpose[]" of the impeachment use. (Docket # 23 at 3).  The fallacy of Moses's argument is that the second sentence does not set

forth any additional impeachment purpose; the first sentence already permits the government to

use a witness's proffered statement to impeach the witness at any "subsequent proceeding,"

which, by definition, would include subsequent prosecutive proceedings for perjury, making

false statements, or obstructing justice.  Thus, to construe the second sentence in the manner

Moses advocates renders the second sentence redundant.  *See*, *e.g.*, *Galli v. Metz*, 973 F.2d 145,

149 (2d Cir. 1992) ("an interpretation of a contract that has 'the effect of rendering at least one

clause superfluous or meaningless … is not preferred and will be avoided if possible'") (quoting

*Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988)).

          Finally, Moses also argues that the reference to perjury prosecutions in the second

sentence supports his construction of that sentence to limit the types of prosecutions referenced

(perjury, false statements and obstruction of justice) to those based on statements made by the

witness at a setting other than a proffer session, noting that proffer session statements are not

made under oath and thus cannot form the basis of a perjury charge.  (Docket # 23 at 3-4).  Of

course, a charge for false statements, unlike a perjury charge, does not require that the statements

on which the charge is based be made under oath.  *See* 18 U.S.C. § 1001(a)(2) ("[e]xcept as

otherwise provided in this section, whoever, in any matter within the jurisdiction of the

executive, legislative, or judicial branch of the [g]overnment of the United States, knowingly and

willfully . . . makes any materially false, fictitious, or fraudulent statement or representation . . .

shall be fined under this title, imprisoned not more than [five] years . . . or both").  In any event,

the inclusion of perjury prosecutions in the second sentence makes sense in the context of

paragraph ten of the Proffer Agreement, which subjects a witness's grand jury or other testimony

provided "at the request of the government" to "[t]he terms of th[e] [Proffer] Agreement."

(Docket # 20-2 at ¶ 10).  The second sentence of paragraph five permits the government to

charge a witness with perjury based upon his or her sworn statements made to a grand jury or other tribunal "at the request of the government," notwithstanding that the statements are considered proffered statements under the Proffer Agreement.

In sum, the plain language of the second sentence of paragraph five permits the government to use "*any* statements . . . *provided by* the witness . . . *against* the witness in a prosecution for perjury, *making false statements* or obstruction of justice."  (Docket # 20-2 at ¶ 5) (emphasis supplied).  Obtaining an indictment charging Moses with making false statements at the Proffer Session squarely falls within the plain language of the second sentence.  *See United States v. Parra*, 302 F. Supp. 2d 226, 237 (S.D.N.Y. 2004) (in determining the clarity or ambiguity of a proffer agreement, "[f]orm should not prevail over substance and a sensible meaning of words should be sought") (citation and quotations omitted), *aff'd*, 249 F. App'x 226 (2d Cir. 2007) (summary order).

## CONCLUSION

For the above-stated reasons, I recommend that the District Court deny Moses's motion to dismiss Count Two of the indictment.  (Docket # 18).

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       August 21, 2019

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[2]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       August 21, 2019

---

[2] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).