UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.

GEORGE MOSES,

           Defendant.
_____

**DECISION AND ORDER**

6:19-CR-06074 EAW



## I.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant George Moses ("Defendant") stands accused by way of an Indictment filed on May 9, 2019, with two separate counts of making false statements in violation of 18 U.S.C. § 1001(a)(2). (Dkt. 12). Count Two of the Indictment relates to statements allegedly made during a proffer session with the Government on or about July 31, 2018. (*Id*. at 8-9). This Court referred all pretrial matters in the case to United States Magistrate Judge Marian W. Payson pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). (Dkt. 14).

On June 10, 2019, Defendant filed a motion to dismiss Count Two, arguing that prosecution of Defendant violates the written proffer agreement. (Dkt. 18; Dkt. 19; Dkt. 20). The Government opposed Defendant's motion (Dkt. 22), and Defendant submitted papers in reply (Dkt. 23). Oral argument was held before Judge Payson on July 23, 2019 (Dkt. 25), and on August 21, 2019, she issued a Report and Recommendation recommending that Defendant's motion be denied (Dkt. 26).

On September 4, 2019, Defendant filed objections to the Report and Recommendation (Dkt. 28), and the Government filed papers in response on September

18, 2019 (Dkt. 32). Oral argument was held before the undersigned on September 23, 2019 (Dkt. 33), at which time the Court reserved decision. For the reasons set forth below, and for the reasons set forth in Judge Payson's Report and Recommendation, the motion to dismiss Count Two is denied.

## II. <u>LEGAL STANDARDS</u>

### A. <u>*De Novo* Review of Report and Recommendation</u>

A district court reviews any specific objections to a report and recommendation on a dispositive issue, such as a motion to dismiss, under a *de novo* standard. Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). To trigger the *de novo* review standard, objections to a report and recommendation "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009).

### B. <u>Proffer Agreements</u>

"Pre-trial agreements, such as cooperation agreements and proffer agreements, are interpreted according to principles of contract law." *United States v. Liranzo*, 944 F.2d 73, 77 (2d Cir. 1991). Interpreting a contract such as a proffer agreement is generally a question of law, and where its language is unambiguous, "the parties' intent is discerned from the four corners of the contract." *Id.* "Nonetheless, because agreements between a defendant and the Government are 'unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain,' courts must 'resolve any

ambiguities in the agreement against the government.'" *United States v. Chaparro*, 181 F. Supp. 2d 323, 330 (S.D.N.Y. 2002) (citations omitted).

### III. THE PROFFER AGREEMENT

Paragraph 1 of the proffer agreement states, in relevant part:

> The witness agrees to provide complete and truthful information regarding any and all criminal matters of which the witness may have knowledge.

(Dkt. 28-1 at ¶ 1). This underscores the purpose of the proffer agreement, as stated in its opening paragraph, that the proffer session is intended to allow the Government to "assess [Defendant's] value as a potential witness." (*Id.* at 1). In order to make that assessment, the proffered information must be truthful. Indeed, this is highlighted by Paragraph 8 of the proffer agreement allowing the Government to require the witness to submit to a polygraph examination "concerning any information provided during the proffer." (*Id.* at ¶ 8).

Paragraph 4 of the proffer agreement sets forth the Government's commitment not to use any statements provided by the witness directly against the witness in any proceeding "except as provided in paragraphs 5, 6 and 7 of this agreement." (*Id.* at ¶ 4). Paragraph 5 of the proffer agreement states, in relevant part, as follows:

> Any statements . . . provided by the witness may be offered to impeach the witness' testimony in any subsequent proceeding. *Furthermore, any statements . . . provided by the witness may be used against the witness in a prosecution for perjury, making false statements or obstruction of justice*.

(*Id.* at ¶ 5 (emphasis added)). Paragraph 7 of the proffer agreement states, in relevant part, as follows:

> In the event the witness knowingly provides false or misleading information, or withholds material information, the government reserves the right to use any statements . . . provided pursuant to this agreement <u>directly</u> against the witness for any purpose deemed proper by the government. If the witness opposes direct use of such statements . . . the witness shall have the burden to move to suppress such statements . . . pursuant to Fed. R. Crim. P. 12. Upon the filing of such motion, the government shall have the burden of proof by a preponderance of the evidence.

(*Id.* at ¶ 7 (emphasis in original)).

## IV. <u>ANALYSIS</u>

The Court concludes that both Paragraph 5 and Paragraph 7 of the proffer agreement permit the use of Defendant's allegedly false statements during the proffer session on July 31, 2018, in a prosecution for violating 18 U.S.C. § 1001(a)(2) as set forth in Count Two of the Indictment. Defendant's efforts to create ambiguity with clear-cut language constitutes an unreasonable reading of the proffer agreement. The agreement repeatedly makes it clear that Defendant must be truthful at the proffer session. Plainly, the intent of the parties as gleaned from the language in the proffer agreement was that Defendant would tell the truth during the proffer session and the Government would be restricted in its use of the information provided by Defendant. However, if Defendant failed to comply with his promise to tell the truth, then the Government's restrictions on using the information were removed. That was the bargain struck by the parties. To interpret the agreement in the manner urged by Defendant would constitute a tortured reading of the proffer agreement that would ultimately permit Defendant to lie with impunity at the proffer session in direct contravention of the purpose of the agreement. For the reasons set forth

below, and as set forth in the Report and Recommendation, the motion to dismiss Count Two is denied.

A. <u>Paragraph 5 of the Proffer Agreement</u>

With respect to Paragraph 5, Defendant argues that both sentences of this paragraph relate to use of proffered statements for impeachment purposes. According to Defendant, the second sentence of Paragraph 5 allows the use of statements during a proffer session only in a prosecution involving statements made at a different time than proffer session statements. According to Defendant's logic, the proffer session statements cannot independently serve as the basis for a false statements prosecution.

For the reasons set forth in Judge Payson's well-reasoned and thorough Report and Recommendation, this Court agrees that the second sentence of Paragraph 5 allows use of statements made during a proffer session in a prosecution, such as the present one, for making false statements during that proffer session. As explained by Judge Payson, no reasonable interpretation of the second sentence of Paragraph 5 would limit the use of the proffer session statements to impeachment purposes.

Defendant cites to the reference to "perjury" in that second sentence, arguing that because statements during a proffer session are not under oath, that necessarily means that the second sentence of Paragraph 5 is limited to a prosecution for statements made at a time different than the proffer session. The Court does not agree. Defendant's attempt to read a time constraint into the second sentence of Paragraph 5—when there is no such reference in the plain language of the agreement—is unreasonable. While ambiguity in a proffer agreement will be construed against the Government, there is no such ambiguity

here. "Clear contractual language does not become ambiguous simply because the parties to the litigation argue different interpretations." *Maniolos v. United States*, 741 F. Supp. 2d 555, 569 (S.D.N.Y. 2010) (collecting cases). Moreover, Defendant's efforts to rely on extrinsic material in the form of proffer agreements in other districts to create an ambiguity (*see* Dkt. 28-6; Dkt. 28-7), when the language in Paragraph 5 is unambiguous, violates basic tenets of contract construction. *See, e.g., Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) ("Ambiguity is determined by looking within the four corners of the document, not to outside sources.") (quoting *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009)).

The language of the second sentence of Paragraph 5 is broad—any statements made by Defendant pursuant to the proffer agreement—whether they be made during the proffer session, or at a later time under oath before a grand jury consistent with the language in Paragraph 10, or at any other time—may be used against Defendant "in a prosecution for perjury, making false statements, or obstruction of justice." That is exactly what the Government has done here with the charge of making false statements in Count Two.

B.  Paragraph 7 of the Proffer Agreement

Judge Payson did not directly resolve whether Paragraph 7 of the proffer agreement also permitted prosecution of the charge in Count Two. (*See* Dkt. 26 at 5 n.1). The language in Paragraph 7 is generally broader than the second sentence of Paragraph 5. To invoke Paragraph 7, the witness must knowingly provide false or misleading information (whereas Paragraph 5 contains no such requirement). However, Paragraph 7 allows false statements made during a proffer session to be used by the Government "directly against

the witness for any purpose deemed proper by the government" whereas Paragraph 5 is limited to "a prosecution for perjury, making false statements or obstruction of justice." In other words, if the witness knowingly provides false or misleading information during the proffer session, the witness breaches the fundamental bargain struck with the Government and the Government's use of the proffer session statements is unlimited. Thus, Paragraph 7 also permits the prosecution of Count Two.

Defendant argues that Paragraph 7 does not mean what it says because Defendant could not file a motion to suppress prior to the return of the Indictment. Defendant argues that in contravention of Paragraph 7, the Government "used the proffer statements here in the grand jury to indict him without the opportunity to move for suppression. . . ." (Dkt. 28 at 16). Again, Defendant's reading of the agreement is tortured and unreasonable. Paragraph 7 does not suggest that the Government cannot use the proffer session statements without first providing the witness an opportunity to move to suppress the statements. (Dkt. 28-1 at ¶ 7). Rather, Paragraph 7 simply states that if the witness opposes the direct use of the statements, then it is his "burden" to move to suppress the statements. (*Id.*). Paragraph 7 does not state that the Government is prevented from using the statements prior to resolution of a motion to suppress—rather, it places a "burden" on the witness to move to suppress if he wishes to prevent use of the statements. (*Id.*). As with any motion to suppress under Federal Rule of Criminal Procedure 12(b)(3)(C), it would necessarily be made before trial but after the return of an indictment. The timing for a motion to suppress does not vitiate the broad language of Paragraph 7 permitting the Government to use the proffer session statements for "any purpose deemed proper by the government." (Dkt. 28-

1 at ¶ 7). If an indictment is returned based on false statements made at a proffer session—as in this case—and the witness "opposes the direct use of such statements" then it is the witness who bears the "burden" to file a motion to suppress pursuant to Rule 12. (*Id.*). Defendant has not filed any such motion here.

The Court is cognizant that any ambiguities in the proffer agreement must be construed against the Government—but here, there is no ambiguity. Accordingly, the Court concludes that Paragraph 7 also mandates denial of Defendant's motion to dismiss Count Two.

## V. <u>CONCLUSION</u>

For the reasons set forth herein and the reasons set forth in the Report and Recommendation, the Court adopts the Report and Recommendation (Dkt. 26) and denies Defendant's motion to dismiss (Dkt. 18).

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: October 21, 2019
         Rochester, New York