UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.

GEORGE MOSES and JANIS WHITE,

                Defendants.
_____



**DECISION AND ORDER**

6:19-CR-06074 EAW

## I.   **INTRODUCTION**

Defendant George Moses ("Moses") seeks to sever his trial from that of his co-defendant, Janis White ("White"). (Dkt. 53). Moses and White are charged together with a conspiracy to commit wire fraud, along with related substantive wire fraud counts. (Dkt. 42). Because there is no reasonable basis to try these two defendants separately on the conspiracy and wire fraud counts, the Court denies Moses' request to sever his trial from White's trial. Therefore Moses will at least be jointly tried with White on the counts with which they are both charged—the wire fraud conspiracy and related substantive wire fraud counts charged in counts 32 through 42 of the Second Superseding Indictment, as well as the related theft charged against Moses in count 43.

However, because the Court requires additional information—namely White's anticipated severance motion—to be able to fully evaluate Moses' other severance requests, including his request to sever White's obstruction counts, the Court reserves decision on the remaining aspects of Moses' severance motion. The Court needs to assess White's to-be-filed severance motion in order to adequately exercise its discretion and

decide the remaining aspects of Moses' pending severance motion. In other words, the severance motion that White's counsel has indicated he intends to file is necessary for the Court to resolve the remaining aspects of Moses' severance motion. As a result, the Court denies Moses' severance motion to the extent it seeks to sever his trial completely from the trial of White, but otherwise the Court reserves decision.

Moreover, while the Court has already granted an interests-of-justice exclusion from the speedy trial clock pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and (B)(iv) through February 24, 2020 (Dkt. 47), the Court further notes that the speedy trial clock remains stopped pursuant to 18 U.S.C. § 3161(h)(1)(D) because Moses' severance motion remains pending and the Court does not yet have all information needed to fully decide the motion—namely, the information that will be obtained through the briefing and oral argument of White's planned severance motion. *See Henderson v. United States*, 476 U.S. 321, 330-31 (1986) (delay under § 3161(h)(1)(F), now codified at § 3161(h)(1)(D), excludes time resulting from the filing of any pretrial motion without any limiting qualification that the delay be "reasonably necessary" and further excludes time "after a hearing on a motion but before the district court receives all the submissions by counsel it needs to decide that motion").

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Charges

On May 9, 2019, an Indictment was returned charging Moses with two separate counts of making false statements in violation of 18 U.S.C. § 1001(a)(2). (Dkt. 12). Moses allegedly made the purportedly false statements on July 25 and 31, 2018, during interviews with the Federal Bureau of Investigations ("FBI"), conducted as part of an investigation of

an alleged fraudulent scheme in 2015 involving former Rochester City Councilmember Adam McFadden ("McFadden"), McFadden's company Caesar Development LLC, the Rochester Housing Authority ("RHA"), and other entities and individuals as detailed in the Indictment. On October 24, 2019, a Superseding Indictment was returned against Moses, adding an additional 26 counts to the § 1001(a)(2) charges. (Dkt. 36). Less than one month later, on November 21, 2019, a Second Superseding Indictment ("SSI") was returned, adding additional charges and including White as a defendant. (Dkt. 42). Moses is alleged to have served as Chairman of the Board of Commissioners of RHA, and as a member of the Board of Directors of Rochester Housing Charities ("RHC"), an entity formed by RHA. (*Id.* at ¶¶ 6-7). White is alleged to have served as Executive Secretary for RHA and Board Secretary for RHC. (*Id.* at ¶ 8).

The charges alleged in the SSI can be summarized as follows:

- Counts 1 through 22

    Wire fraud by Moses in violation of 18 U.S.C. §§ 1343 and 2, from December 2017 to September 2019, related to an alleged scheme to defraud RHC by causing RHC to overpay its Executive Director, with a portion of those overpayments then directed to Moses through wire transfers;

- Count 23

    Aggravated identity theft by Moses in violation of 18 U.S.C. § 1028A(a)(1), from December 2017 to September 2019, involving the RHC Executive Director as related to the wire fraud charges in counts 1 through 22;

- Count 24

    Federal program theft by Moses in violation of 18 U.S.C. § 666(a)(1)(A) from December 2017 to September 2019, involving funds belonging to RHC related to the scheme outlined in counts 1 through 22;

- Count 25

    Conspiracy to commit wire fraud by Moses in violation of 18 U.S.C. § 1349, from December 2017 to March 2018, involving an alleged scheme to defraud RHC with "Contractor A" whereby Moses caused RHC to pay "Contractor A" moneys to which it was not entitled and then a portion of those moneys were paid in kickbacks to Moses;

- Counts 26 through 30

    Wire fraud by Moses in violation of 18 U.S.C. §§ 1343 and 2, from December 2017 to March 2018, related to the conspiracy outlined in Count 25;

- Count 31

    Federal program bribery by Moses in violation of 18 U.S.C. § 666(a)(1)(B) from December 2017 to March 2018, related to the scheme outlined in Counts 25 through 30 involving "Contractor A";

- Count 32

    Conspiracy to commit wire fraud by Moses and White in violation of 18 U.S.C. § 1349, from March 2018 to February 2019, involving an alleged scheme to defraud RHC by causing RHC to pay HJJ Property Development Inc. ("HJJ Property") (a company owned by White's mother and stepfather, but allegedly controlled by White) for services that were not performed;

- Counts 33 through 42

    Wire fraud by Moses and White in violation of 18 U.S.C. §§ 1343 and 2, from April 2018 to July 2018,[1] related to the alleged scheme to defraud RHC involving HJJ Property;

---

[1] An introductory paragraph to these substantive wire fraud counts alleges that the conduct occurred "[b]etween in or about December 2017, and in or about March 2018"

- Count 43

    Federal program theft against Moses in violation of 18 U.S.C. § 666(a)(1)(A), from March 2018 to January 2019, related to the scheme outlined in counts 32 through 42, involving White and HJJ Property;

- Count 44

    Federal program theft against Moses in violation of 18 U.S.C. § 666(a)(1)(A), from December 2017 to March 2018, involving funds belonging to RHC that were paid to an affiliate of North East Area Development Association ("NEAD"), an organization for which Moses served as Executive Director, for vehicles and their related expenses;

- Count 45

    Conspiracy to commit wire fraud by Moses in violation of 18 U.S.C. § 1349, from July 2017 to March 2018, involving an alleged scheme to defraud the Rochester Area Community Foundation Initiatives Inc. and a program it funded, Quad A for Kids. McFadden served as Executive Director of Quad A for Kids and allegedly engaged in the conspiracy with Moses;

- Counts 46 and 47

    Wire fraud by Moses in violation of 18 U.S.C. §§ 1343 and 2, from July 2017 to March 2018, related to the conspiracy outlined in count 45;

- Counts 48 and 49

    Making false statements by Moses in violation of 18 U.S.C. § 1001(a)(2), to the FBI on July 25 and 31, 2018, as alleged in the original Indictment, in connection with a scheme committed by McFadden against RHC in 2015;

- Counts 50 through 53

    Filing false tax returns by Moses for tax years 2015 through 2018, in violation of 26 U.S.C. § 7206(1);

---

(Dkt. 42 at counts 33-42, ¶ 2); however, the transactions detailed in these counts run from April 10, 2018, through July 17, 2018 (*id.* at ¶ 3).

- Count 54

    Tampering with documents by White in violation of 18 U.S.C. § 1512(c)(1), between December 14, 2018, and February 7, 2019, in connection with a federal grand jury investigation of HJJ Property; and,

- Count 55

    Falsification of records by White in violation of 18 U.S.C. § 1519, between December 14, 2018, and February 7, 2019, in connection with the FBI's investigation of HJJ Property.

**B.    Moses' Severance Motion**

On December 2, 2019, Moses filed a motion seeking the following relief: (1) to sever the trial of his case from White's trial pursuant to Federal Rule of Criminal Procedure 14; and (2) to sever two of the alleged false statements in the false tax charges, counts 50 through 53, from the remainder of the tax counts and the remainder of the SSI pursuant to Rule 8(a) of the Federal Rules of Criminal Procedure. (Dkt. 53).

The Government filed its response in opposition on December 16, 2019, arguing that Moses' trial should not be severed from White's trial, that the obstruction charges against White (counts 54 and 55) relate to the conspiracy charged against Moses and White (count 32), and that all alleged false statements on Moses' tax returns should be considered together as part of the tax counts even where they do not relate to the non-tax charges. (Dkt. 57).

On December 18, 2019, Moses filed a letter reply, arguing for the first time that the request to try his case separately from White's trial was not based on Rule 14, but rather

was based on the Speedy Trial Act, 18 U.S.C. § 3161(h)(6).[2] (Dkt. 59). Moses also submitted further arguments that the White obstruction counts were not admissible against him, and about the alleged misjoinder of certain portions of the tax counts. (*Id.*).

On December 19, 2019, the Government filed a sur-reply raising the point that Moses "never argued, cited, invoked, or mentioned the Speedy Trial Act in his motion for severance. He did not even cite the Speedy Trial Act nor 18 U.S.C. § 3161(h)(6) in his Table of Authorities." (Dkt. 60 at 1). The Government further argued that a joint trial of Moses and White in May or June 2020, is reasonable and is within the speedy trial clock, particularly where all but the § 1001(a)(1) charges were just returned by the grand jury in October and November 2019. (*Id.* at 2).

Oral argument was held before the undersigned on December 20, 2019. (Dkt. 61; Dkt. 62). At oral argument, the Court advised that it was not willing to sever Moses' trial from White's on counts 32 through 43 because of the additional few months that it was going to take for White to file pretrial motions and prepare for trial. (Dkt. 62 at 8). In response, counsel for Moses confirmed that he was not asking to go to trial on the other

---

[2] The Speedy Trial Act was not cited in Defendant's initial papers in support of severance, and in fact, his notice of motion specifically requested severance of his trial from that of White's pursuant to Rule 14. (Dkt. 53; *see also* Dkt. 54 (Defendant's Memorandum of Law) at 5 ("Defendant Moses submits this brief in support of his motion: (1) to sever the trial of his case from the trial of his co-defendant White pursuant to Rule 14 of the Federal Rules of Criminal Procedure; (2) to sever two of the alleged false statements in the false tax charges, counts 50 through 53, from the remainder of the tax counts and the remainder of the second superseding indictment pursuant to Rule 8(a) of the Federal Rules of Criminal Procedure.")).

counts on February 3, 2020.[3] (*Id.*). The Court additionally advised that it intended to reserve decision with respect to Moses' motion to the extent he sought to sever White's obstruction counts and certain portions of the tax counts (*id.* at 8-9).

## III. <u>RULES GOVERNING JOINDER AND SEVERANCE</u>

Rule 8(b) provides for joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b) ("The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count."). Here, counts 32 through 43 of the SSI plainly allege a common scheme involving Moses' and White's conspiracy to defraud RHC involving HJJ Property. Thus, Moses and White are properly joined pursuant to Fed. R. Crim. P. 8(b), and Moses does not argue otherwise. *See United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988) (It is an "established rule . . . that a non-frivolous conspiracy charge is sufficient to support joinder of defendants under Fed. R. Crim. P. 8(b).").

---

[3] On November 7, 2019, at the arraignment on the Superseding Indictment (when Moses was still the lone defendant), he indicated that he did not intend to file any pretrial motions and asked that a trial be scheduled for February 3, 2020. (Dkt. 39; Dkt. 41). The Court accommodated his request (Dkt. 40), although it was recognized at that appearance that another indictment would be returned shortly adding additional charges and another defendant, and that new defendant may not be prepared to proceed on February 3, 2020. Indeed, at the arraignment on the SSI on November 25, 2019, White's counsel represented that he intended to file pretrial motions and he would not be prepared to proceed on February 3, 2020. (Dkt. 49; Dkt. 50). Thus, the Court kept the February 3, 2020, trial date in place for Moses, but also issued a pretrial motion scheduling order and scheduled White's trial (and any joint trial with Moses if severance was denied) to proceed on June 8, 2020. (Dkt. 47).

Pursuant to Rule 14, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). The decision to sever a trial pursuant to Rule 14 is "confided to the sound discretion of the trial court." *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003). A trial court's decision concerning severance is considered "virtually unreviewable," and the denial of such a motion "will not be reversed unless appellants establish that the trial court abused its discretion." *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991) (citation omitted). In order to successfully challenge the denial of a request for severance, a defendant "must establish prejudice so great as to deny him a fair trial." *Id.*

The party requesting severance must demonstrate substantial prejudice: "When defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Astra Motor Cars*, 352 F. Supp. 2d 367, 369-70 (E.D.N.Y. 2005) (alteration omitted and quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)); *see also Cardascia*, 951 F.2d at 482 (in order to successfully challenge the denial of a request for severance, a defendant "must establish prejudice so great as to deny him a fair trial"); *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988) ("[T]he defendant must show that he or she suffered prejudice so substantial as to amount to a 'miscarriage of justice.'"). "[D]iffering levels of culpability and proof are

inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." *United States v. Chang An–Lo*, 851 F.2d 547, 557 (2d Cir. 1988) (citation omitted). "That the defendant would have had a better chance of acquittal at a separate trial does not constitute substantial prejudice." *United States v. Carson*, 702 F.2d 351, 366 (2d Cir. 1983).

There is a powerful presumption in favor of joint trials of defendants indicted together based upon the underlying policies of efficiency, avoiding inconsistent verdicts, providing a "more accurate assessment of relative culpability," avoiding victims and witnesses having to testify repeatedly, and avoiding the random favoring of "the last-tried defendants who have the advantage of knowing the prosecutor's case beforehand." *Richardson v. Marsh*, 481 U.S. 200, 210, 219 n.7 (1987) (citation omitted); *see also Cardascia*, 951 F.2d at 482 ("The deference given by an appellate court to a trial court's severance decision reflects the policy favoring joinder of trials, especially when the underlying crime involves a common plan or scheme and defendants have been jointly indicted."). The Second Circuit has instructed that "[c]onsiderations of efficiency and consistency militate in favor of trying jointly defendants who were indicted together," and "[j]oint trials are often particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy. . . ." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (citations omitted); *see also United States v. Van Sichem*, No. SS 89 CR. 813 (KMW), 1990 WL 41746, at *1 (S.D.N.Y. Apr. 2, 1990) ("There is a strong presumption in favor of joint trials for jointly indicted defendants, particularly where, as here, the 'crimes charged involve a common scheme or plan.'" (alteration

omitted and quoting *United States v. Girard*, 601 F.2d 69, 72 (2d Cir. 1979)). Indeed, "[j]oint trials serve the interests of the government, the accused, and the public by eliminating the additional expense and repetition associated with successive prosecutions." *Id.* (citing *United States v. McGrath*, 558 F.2d 1102, 1106 (2d Cir. 1977) and *United States v. Lyles*, 593 F.2d 182, 191 (2d Cir. 1979)).

IV. **MOSES' REQUEST TO BE TRIED SEPARATELY FROM WHITE**

The sole basis for Moses' request that his trial be completely severed from that of White's trial is purported delay—and more specifically, a delay from February 3, 2020 (when this Court scheduled Moses' trial before he was charged with White) to June 8, 2020 (when this Court has scheduled White's trial, and any joint trial with Moses). (Dkt. 54 at 14 ("We respectfully submit that a delay of four months from February 3 until June 8 for a joint trial would be severely detrimental to Mr. Moses and we request that the Court exercise its discretion to allow trial of Mr. Moses to proceed on February 3.")). Moses' argument that this delay would be "severely detrimental" is not based on his custody status (Moses is out of custody); rather, it is based on the alleged reputational and economic harm that he has and will purportedly continue to suffer while these charges are pending. (*Id.* at 13-14).

In support of his motion, Moses does not cite a single case granting the relief he seeks under similar circumstances. By contrast, the Government cites *United States v. Babich*, Criminal Action No. 16-cr-10343-ADB, 2019 WL 163102, at *2 (D. Mass. Jan. 10, 2019), and *United States v. Betonsports PLC*, No. 4:06CR337CEJ(MLM), 2009 WL 736942, at *4 (E.D. Mo. March 15, 2009), both of which stand for the principle that

severance is not justified simply because a defendant desires a separate trial as a result of economic or personal circumstances. If the Court were to sever Moses' trial from White's, where they are both alleged to have been involved in the same conspiracy involving RHC and the use of purportedly fraudulent invoices from HJJ Property, it would result in two trials just a few months apart involving the same evidence and same witnesses, thus imposing an undue burden on the efficiency and integrity of the judicial system. While the Court understands Moses' desire to proceed expeditiously to trial, Moses' contention that he should be tried on a conspiracy charge without his co-defendant because of the few months delay that his co-defendant requires to file pretrial motions and prepare for trial (on an indictment just returned two months ago) is not warranted by Rule 14.

Moses' request fares no better when evaluated under the Speedy Trial Act, an issue that Moses improperly raised for the first time with his reply papers. *See Haywin Textile Prods., Inc. v. Int'l Fin. Inv.*, 137 F. Supp. 2d 431, 434 n.2 (S.D.N.Y. 2001) ("It is well settled that courts should not consider arguments first raised in a party's reply brief which afford no opportunity for response from the opposing party." (citing *Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 142 (2d Cir. 1999)). Once a severance motion is filed, the Speedy Trial Act imposes a reasonableness requirement on the delay occasioned by being joined with a co-defendant for trial. *See* 18 U.S.C. § 3161(h)(6).

Under the circumstances of this case, where White was just joined as a defendant, where most of the charges against both Moses and White were only charged in an indictment returned by a grand jury, where neither defendant is in custody, where White's counsel needs a reasonable amount of time to review the voluminous discovery materials

and prepare pretrial motions, where judicial efficiency and resources will be preserved by trying White and Moses together on at least counts 32 through 43, and where a trial has been scheduled for June 8, 2020—roughly four months after the trial date requested by Moses—the Court concludes that this several month delay is reasonable for Speedy Trial Act purposes. *See United States v. Piteo*, 726 F.2d 50, 53 (2d Cir. 1983) (delaying trial by almost three months deemed reasonable under § 3161(h)(6)); *United States v. Contreras*, 216 F. Supp. 3d 299, 306-08 (W.D.N.Y. 2016) (delay of over a year occasioned by co-defendants' pretrial motions and other issues deemed reasonable under § 3161(h)(6)); *United States v. Westcom*, Case No. 5:13-cr-93, Case No. 5:13-cr-81-1, 2, 2014 WL 12633537, at *6 (D. Vt. April 23, 2014) (finding that delay of little more than three months to permit consolidation was reasonable under § 3161(h)(6), and citing cases that have approved "far longer delays").

Accordingly, Moses' request to sever his trial completely from White's trial is denied.

V. **MOSES' REQUEST TO SEVER WHITE'S OBSTRUCTION CHARGES (COUNTS 54 AND 55) FROM THE CONSPIRACY CHARGED IN COUNT 32, AND MOSES' REQUEST TO SEVER A PORTION OF THE TAX COUNTS**

Moses argues that the charges against White in counts 54 and 55 would be inadmissible against him because they are not in furtherance of the conspiracy charged in count 32, and the prejudicial spillover of the obstruction evidence against him would be so substantial that it would not be curable through a limiting instruction, thus warranting severance pursuant to Rule 14. (Dkt. 54 at 15-20). Moses also argues that "two of the five

false statement items" that serve as the basis for the tax charges in counts 50 through 53 should be severed pursuant to Rule 8(a). (*Id.* at 20-23).

As the Court indicated at the appearance on December 20, 2019, it does not believe it is in a position to resolve these portions of Moses' severance motion—particularly the aspect related to the obstruction counts—until such time that it is able to assess White's anticipated severance motion. In other words, White has indicated that she intends to file a severance motion, and the Court needs to weigh the arguments made by White in order to appropriately decide the ultimate form that this trial will take. Again, both Moses and White will be tried jointly with respect to counts 32 through 43[4] but the Court needs to understand White's severance arguments in order to decide whether any of the remaining counts should be severed for purposes of trial.

## VI. CONCLUSION

For the reasons set forth herein, Moses' severance motion (Dkt. 53) is denied to the extent he seeks to completely sever his trial from White's trial, and instead he will be tried with White on counts 32 through 43, but the Court otherwise reserves decision on the pending motion until such time that it receives briefing and hears oral argument on White's anticipated severance motion.

---

[4] Of course, as the Court advised at the appearance on December 20, 2019, White has not yet filed her severance motion and she is not precluded from asking that the Court sever her trial on counts 32 through 42 from Defendant's trial on counts 32 through 43.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: January 21, 2020
         Rochester, New York