UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.

GEORGE MOSES,

        Defendant.
_____

**DECISION AND ORDER**

6:19-CR-06074 EAW

## I.    INTRODUCTION

Defendant George Moses ("Defendant") is charged by way of a Fifth Superseding Indictment (hereinafter the "indictment") with 32 separate counts of mail and wire fraud, conspiracy to commit the same, money laundering, federal program bribery and theft, tampering with documents, false statements, and filing false income tax returns. (Dkt. 123). Defendant's trial has been adjourned several times at the request of his counsel due to the COVID-19 pandemic and is now scheduled to proceed on October 12, 2021. (Dkt. 150).

On July 23, 2021, Defendant filed a motion *in limine* to preclude the government from introducing at trial "all evidence and argument regarding marital infidelity." (Dkt. 198). The Court denied Defendant's motion *in limine* from the bench at an appearance on August 4, 2021. (Dkt. 204). This Decision and Order memorializes the Court's reasons for that ruling.

## II. BACKGROUND

The criminal case against Defendant rests, in part, on the government's contention that Defendant used funds belonging to North East Area Development, Inc. ("NEAD"), a not-for-profit organization of which he was executive director, to pay for personal expenses, including unnecessary travel to Canada and immigration services by Canadian entities. (Dkt. 123 at 1, ¶¶ 1, 13; Count 27, ¶¶ 2-3, 20-22, 26). The government further contends that Defendant defrauded the Rochester Housing Charities ("RHC"), an entity formed by the Rochester Housing Authority to assist in its purposes of providing housing opportunities and services for the Rochester community, by receiving kickbacks from a contractor who was performing services for RHC, by causing RHC to pay fraudulent invoices from a sham company known as HJJ Property, and by using RHC's funds to make payments on his personal credit cards. (*Id.* at 1, ¶¶ 3, 11-12; Count 7, ¶¶ 1-10; Count 10, ¶¶ 1-87; Count 19 at ¶¶ 1-4). As part of its proof regarding these charges, the government intends to offer at trial evidence showing that Defendant was engaged in an extramarital affair with a woman who lives in Canada. (*See* Dkt. 199 at 1-2).

## III. DISCUSSION

### A. The Parties' Positions

Defendant argues that evidence that he engaged in marital infidelity is irrelevant to the charges against him. (Dkt. 198-1 at 4). More specifically, he denies that evidence that he had a girlfriend in Toronto is evidence of his motive for engaging in "unnecessary travel," because the fact that Defendant "had personal reasons to enjoy working in Toronto" is "no more relevant than evidence that [Defendant] appreciated Toronto's

architecture or its history or its theater or its waterfront." (*Id*. at 5).  Defendant further contends that evidence that he engaged in an extramarital affair is "much more" prejudicial than probative and should accordingly be excluded under Federal Rule of Evidence 403. (*Id*. at 6-8).

In opposition, the government represents that, at trial, it "does not intend to place any importance nor focus on the defendant's 'marital infidelity.'" (Dkt. 199 at 2).  Instead, the government contends, it intends to offer proof regarding Defendant's extramarital affair as evidence that: (1) Defendant visited Canada using NEAD funds for purely personal reasons and not for any legitimate NEAD purpose; (2) Defendant defrauded RHC because he needed additional funds in order to travel to Canada and support his Canadian girlfriend (including by attempting to purchase a home in Canada and ultimately renting an apartment with his girlfriend); and (3) Defendant used NEAD funds to secure immigration services for his girlfriend and/or her sister.  (*Id*. at 199 at 7-13).

In reply, Defendant continues to argue that evidence of his Canadian girlfriend is irrelevant, because "the mere fact that someone spends money—whether on 'lavish parties' or 'starving Malawian orphans'—does not tend to establish a motive for illicit enrichment." (Dkt. 202 at 7 (quoting *United States v. Hatfield*, 685 F. Supp. 2d 320, 326 (E.D.N.Y. 2010))).  Defendant further argues that while it might be relevant as to some of the charges (particularly the charges related to immigration services) that he had a personal relationship with his Canadian girlfriend, the jury does not need to know that the relationship was romantic.  (*Id*. at 10).  Defendant also contends that the fact he had a girlfriend in Toronto

is irrelevant to whether or not his travel to that city was for legitimate, NEAD-related purposes. (*Id.* at 11-14).

### B.   **Legal Standards**

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "To be relevant, evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a reasonable doubt." *United States v. Litvak*, 808 F.3d 160, 179-80 (2d Cir. 2015) (citation omitted); *see also United States v. Certified Env't Servs., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014) ("[T]he definition of relevance under Fed. R. Evid. 401 is very broad."). Relevant evidence is generally admissible, unless otherwise provided by the Constitution, statute, or relevant rule. Fed. R. Evid. 402; *see also United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) ("[U]nless an exception applies, all relevant evidence is admissible[.]" (quotation and original alteration omitted)).

One exception to the rule that relevant evidence is generally admissible is set forth in Federal Rule of Evidence 403. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "In this context unfair prejudice means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Birney*, 686 F.2d 102, 106 (2d Cir. 1982) (quotation omitted). "[G]enerally speaking, any proof highly probative of guilt is prejudicial to the interests of [a] defendant. The prejudice that Rule

- 4 -

403 is concerned with involves some adverse effect beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quotation and original alteration omitted).

### C. Analysis

Under the broad standard set forth in Rule 401, the Court easily concludes that evidence of Defendant's Canadian girlfriend is relevant to many of the counts set forth in the indictment. First, the government has identified evidence tending to demonstrate that Defendant was struggling to support both his household in Rochester and his girlfriend in Canada. In particular, the government represents that it will present evidence demonstrating that: (1) Defendant advised his Canadian girlfriend that his savings had been depleted after paying for "past due rent" in relation to an apartment they had rented together; (2) Defendant and his Canadian girlfriend sought to buy a house in Canada, but Defendant was concerned about the budget as he was going to "have to maintain two households for a portion of the year"; and (3) Defendant advised one of the contractors from whom he received kickbacks that he needed the money in order to travel to Toronto. (Dkt. 199 at 9-12). It is well-established that "[i]t is in the trial judge's discretion to admit evidence suggesting the defendant['s] motive for the crime charged." *United States v. King*, 560 F.2d 122, 133 (2d Cir. 1977) (citations omitted). Evidence of financial motivation is frequently admitted in fraud cases and is further considered more probative than prejudicial. *See, e.g., United States v. Hoey*, 725 F. App'x 58, 60-61 (2d Cir. 2018) (in case where the defendant was accused of defrauding employee profit sharing plan, affirming district court's admission of evidence of the defendant's personal spending

habits, including evidence of "payments to his girlfriend," because such evidence was "highly probative" of the defendant's motive for taking the money); *United States v. Reed*, 639 F.2d 896, 907 (2d Cir. 1981) ("a defendant's belief that he is in financial difficulty is admissible to show motive, and not unduly prejudicial"); *United States v. Inniss*, No. 18-CR-134 (KAM), 2019 WL 6999912, at *11 (E.D.N.Y. Dec. 20, 2019) ("In a number of cases within the Second Circuit, courts have admitted evidence of financial difficulty on the grounds that it is relevant and not unduly prejudicial"); *United States v. Ferguson*, No. CRIM.3:06CR137CFD, 2007 WL 4240782, at *1 (D. Conn. Nov. 30, 2007) ("Evidence that links a defendant's financial compensation to his possible motives for participating in an alleged fraud is relevant to proving the fraud.").

Second, evidence that Defendant had a girlfriend in Canada is also probative of his motive for allegedly misappropriating NEAD's funds to travel to Toronto for no legitimate business purpose. In other words, the fact that Defendant had a significant, secret reason for wanting to be in Canada for substantial amounts of time makes the government's allegations more probable.

Defendant contends that the government improperly seeks to "argue that whether or not [Defendant] did NEAD work in Canada, he is guilty of fraud because, by traveling to Canada and receiving reimbursement, he furthered his undisclosed romantic interests while purporting to advance the purposes of NEAD, an entity to whom he owed a fiduciary duty." (Dkt. 202 at 14 (quotation omitted)). However, the government clarified at oral argument that its position is that "in most cases," Defendant was performing no legitimate work for NEAD while in Canada and using NEAD funds. (Dkt. 204 at 58). The

government further expressly acknowledged that it cannot seek a conviction on the basis that Defendant "was up there for a legitimate business purpose and he can't see his girlfriend on the side." (*Id*. at 62). Accordingly, the Court need not resolve the matter of whether a "mixed-motive theory" of fraud would, as Defendant suggests, present "serious vagueness issues" (Dkt. 202 at 13), because the government is not pursuing such a theory in this case.

Defendant's alternative arguments that "[t]he Government's no-work theory" and "geographic-restriction theory" of fraud do not "require evidence of infidelity" (Dkt. 202 at 11) are misplaced. The standard for relevance, as explained above, is broad, and the dispositive question is not whether a particular item of evidence is critical to the government's theory. "[S]o long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry." *United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006).

Third, the identity of the person for whom immigration services were procured is plainly relevant to the issue of whether such services were appropriately paid for with NEAD's funds. Defendant concedes this point, but argues that "[t]here is a significant difference . . . between proof of a personal relationship and proof of a romantic relationship" and that it is sufficient for the government to be allowed to describe the individual in question as a "friend." (Dkt. 202 at 9-10). The Court disagrees. The particular relationship between Defendant and the woman in question is probative of the degree to which he was motivated to assist with her immigration issues, and a jury could

reasonably conclude that such information would "affect[] the mix of material information[.]" *Quattrone*, 441 F.3d at 188.

Defendant's reliance on *United States v. Guzman-Dominguez*, No. 2:16-CR-00580-RB, 2016 WL 10100736 (D.N.M. July 1, 2016) is misplaced. In that case, the government sought to admit evidence that the defendant, who was married, had paid for his girlfriend (along with two other companions) to accompany him to El Salvador and had made phone calls to his girlfriend from a particular phone. *Id*. at *13. The court excluded evidence of the girlfriend, explaining that "[e]vidence that [the defendant] paid for three people to visit El Salvador is probative of his unexplained wealth, but evidence that one of the travelers was [the defendant's] girlfriend is not more probative of that wealth. Similarly, evidence that [the defendant] used the Apple iPhone to make a call proves his ownership as much as evidence that he used the phone specifically to call his girlfriend." *Id*. In other words, unlike in this case, the identity of the individual on whom the money had been spent and to whom the phone calls had been made provided no useful information regarding motive.

Having concluded that evidence of Defendant's Canadian girlfriend is highly relevant for the reasons set forth above, the Court considers whether the probative value is substantially outweighed by the danger of unfair prejudice and concludes that it is not. Certainly there is some danger of unfair prejudice—there are individuals who have a strong emotional reaction to marital infidelity. However, that risk does not substantially outweigh the significant probative value of this information. Further, the risk of any such unfair prejudice can be mitigated through *voir dire* and, potentially, the use of a limiting instruction. *See United States v. Shyne*, 388 F. App'x 65, 71 (2d Cir. 2010) (affirming

district court's allowance of evidence regarding marital infidelity and explaining that "the district court minimized the risk of prejudice by instructing the jury that whether or not [the defendant] had an affair should not be considered by them in deciding this case"); *United States v. Silver*, No. 15-CR-93 (VEC), 2016 WL 1572993, at *8 (S.D.N.Y. Apr. 14, 2016) (potential prejudice resulting from pretrial disclosure of the defendant's extramarital affairs and any resulting media reports could be mitigated through *voir dire*).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion *in limine* to exclude evidence of marital infidelity (Dkt. 198) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: October 6, 2021
Rochester, New York