UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

              v.

GEORGE MOSES,

              Defendant.
_____

**DECISION AND ORDER**

6:19-CR-06074 EAW

## I. INTRODUCTION

Defendant George Moses ("Defendant") is charged by way of a fifth superseding indictment (hereinafter the "indictment") with 32 separate counts of mail and wire fraud, conspiracy to commit the same, money laundering, federal program bribery and theft, tampering with documents, false statements, and filing false income tax returns. (Dkt. 123). Defendant's trial is scheduled to proceed on October 12, 2021, and is expected to last seven-to-eight weeks. (Dkt. 150).

For reasons discussed fully below, the Court intends to excuse from the pool of prospective jurors summoned in this matter all individuals who are not vaccinated against COVID-19. Defendant agrees that, under the present circumstances, "a fully vaccinated jury is plainly better than an unvaccinated jury" and has waived any "any fair-cross-section objection to excluding unvaccinated people from the jury." (Dkt. 264 at 1-2). However, the government has objected to the exclusion of unvaccinated individuals, because it is "concerned that striking all unvaccinated individuals from the pool would violate the fair cross-section requirement of the Constitution and the Jury Selection and Service Act."

(Dkt. 268 at 1)[1].  The Court has considered the government's position and finds it unpersuasive, for the reasons that follow.

## II.    BACKGROUND

The COVID-19 pandemic and the resulting national emergency as first declared by the President on March 12, 2020, have been ongoing in the United States of America for more than 18 months.  *See* Notice on the Continuation of the National Emergency Concerning the Coronavirus Disease 2019 (COVID-19) Pandemic, 86 FR 11599 (Feb. 26, 2021).  As of October 11, 2021, the Centers for Disease Control and Prevention ("CDC") reports that there have been 44,217,318 identified cases of COVID-19 in this country, resulting in 711,020 deaths.  Ctrs. for Disease Control and Prevention, *COVID Data Tracker*, https://covid.cdc.gov/covid-data-tracker/ (last visited October 11, 2021).  In Monroe County, New York, where the trial in this matter is scheduled to occur, as well as in all of the counties from which prospective jurors will be called, there is currently a high level of community transmission, as defined by the CDC, of the virus that causes COVID-19.  *Id.*

---

[1]    As Defendant correctly notes (*see* Dkt. 264 at 2), the same Department of Justice represented by this District's United States Attorney's Office has taken the opposite position in at least one other case.  In particular, in a case in the United States District Court for the Central District of Illinois, the government represented that "questions and potential 'for cause' excuse or exclusion based on vaccine status does not implicate the fair cross-section requirement."  Gov't's Position Regarding Jury Selection, *United States v. Berrios*, No. 20-CR-30048, Dkt. 53 at 5 (C.D. Ill. May 17, 2021); *see also* Brendan Pierson, *Theranos judge requires COVID shots for jurors, but will that skew the jury pool?*, REUTERS, Sept. 2, 2021, https://www.reuters.com/world/us/theranos-judge-requires-covid-shots-jurors-will-that-skew-jury-pool-2021-09-02/ (noting that in federal criminal trial in United States District Court for the Northern District of California, "both the prosecution and defense . . . backed the decision to excuse unvaccinated jurors").

Vaccines against COVID-19 are now widely accessible in the United States of America and are available to all individuals over the age of 12 for no cost. Ctrs. for Disease Control and Prevention, *Key Things to Know About COVID-19 Vaccines,* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html (last visited October 11, 2021). As of October 11, 2021, the New York State Department of Health reports the following adult vaccination rates in the nine counties from which this District calls jurors for trials in the Rochester courthouse: 60.4% in Chemung County; 64.9% in Livingston County; 79.9% in Monroe County; 78.0% in Ontario County; 58.8% in Seneca County; 66.2% in Schuyler County; 59.7% in Steuben County; 74.7% in Wayne County; and 62.5% in Yates County. N.Y. State Dep't of Health, *COVID-19 Vaccine Tracker*, https://covid19vaccine.health.ny.gov/covid-19-vaccine-tracker (last visited Oct. 11, 2021).

Pursuant to the New York State Department of Health, "[a]symptomatic individuals who have been fully vaccinated against COVID-19 do not need to quarantine after exposure to COVID-19." N.Y. State Dep't of Health, *Quarantines*, https://coronavirus.health.ny.gov/quarantines-contacts (last visited Oct. 11, 2021). However, "[i]ndividuals who have been exposed to someone with confirmed or suspected COVID-19, who are not fully vaccinated or have not recovered from COVID-19 in the previous 3 months, are required to quarantine for 10 days after exposure." *Id*.

### III.   DISCUSSION

####    A.   The Fair Cross-Section of the Community Requirement

"The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community."

*Berghuis v. Smith*, 559 U.S. 314, 319 (2010).  The Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.* (the "JSSA") "codifies the Sixth Amendment's fair cross-section requirement as a right 'to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes.'"  *United States v. Scott*, __ F. Supp. 3d __, 2021 WL 2643819, at *6 (S.D.N.Y. Jun. 28, 2021) (quoting 28 U.S.C. § 1861)[2].  Fair cross-section challenges under the Sixth Amendment and JSSA are both governed by the test established by the Supreme Court in *Duren v. Missouri*, 439 U.S. 357 (1979).  *See United States v. Rioux*, 97 F.3d 648, 660 (2d Cir. 1996) ("The *Duren* test 'governs fair cross section challenges under both the JSSA and the sixth amendment.'" (quoting *United States v. LaChance*, 788 F.2d 856, 864 (2d Cir. 1986) (alteration omitted))).

As another court in this Circuit has recently explained regarding the three-part *Duren* test:

> In order to establish a *prima facie* violation of the fair cross section requirement, . . . a movant has the burden to show that (1) the excluded group is distinctive; (2) representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) the under-representation is due to systematic exclusion of the group in the jury-selection process.  If a [movant] is able to make such a *prima facie* showing, the burden shifts to the [non-movant] to show that attainment of a fair cross section would be incompatible with a significant state interest.

---

[2] The government acknowledges that it does not have any right to assert a fair cross-section challenge under the Sixth Amendment.  (Dkt. 268 at 2); *see Faretta v. California*, 422 U.S. 806, 834 (1975) ("The right to defend is personal.  The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction.").  The JSSA, by contrast, permits the Attorney General of the United States to seek relief in criminal cases where there has been a "substantial failure to comply with the provisions of [the JSSA] in selecting the grand or petit jury."  28 U.S.C. § 1867(b).

*United States v. Irizarry*, No. 1:21-CR-00060 (MKV), 2021 WL 3855869, at *3 (S.D.N.Y. Aug. 27, 2021) (quotations, citations, and alteration omitted).

    **B.**    <u>**The Unvaccinated are not a Distinctive Group for Fair Cross-Section Purposes**</u>

As noted above, the first requirement of the *Duren* test is that the group to be excluded from jury service is "distinctive." The Supreme Court has "never attempted to precisely define the term 'distinctive group,'" but has explained that "the concept of distinctiveness' must be linked to the purposes of the fair-cross-section requirement." *Lockhart v. McCree*, 476 U.S. 162, 174 (1986). More specifically, the purposes of the fair cross-section requirement are "(1) to ensure that the commonsense judgment of the community will act as a hedge against the over-zealous or mistaken prosecutor; (2) to preserve public confidence in the criminal justice system by ensuring that the community participates in the administration of our criminal laws; and (3) to further the belief that sharing in the administration of justice is a phase of civic responsibility." *Silagy v. Peters*, 905 F.3d 986, 1010 (7th Cir. 1990) (citing *Taylor v. Louisiana*, 419 U.S. 522, 530-31 (1975)).

> A group to be cognizable for present purposes must have a definite composition. That is, there must be some factor which defines and limits the group. A cognizable group is not one whose membership shifts from day to day or whose members can be arbitrarily selected. Secondly, the group must have cohesion. There must be a common thread which runs through the group, a basic similarity in attitudes or ideas or experience which is present in members of the group and which cannot be adequately represented if the group is excluded from the jury selection process. Finally, there must be a possibility that exclusion of the group will result in partiality or bias on the part of juries hearing cases in which group members are involved. That is,

the group must have a community of interest which cannot be adequately protected by the rest of the populace.

*United States v. Guzman*, 337 F. Supp. 140, 143-44 (S.D.N.Y. 1972) (quotation omitted), *aff'd*, 468 F.2d 1245 (2d Cir. 1972). Importantly, merely having "shared attitudes" does not qualify a group as distinctive for purposes of the instant analysis. *United States v. Salamone*, 800 F.2d 1216, 1219 (3d Cir. 1986) (citation omitted and finding that members of the National Rifle Association did not constitute a distinctive group for fair-cross-section purposes).

On the record before the Court there is no basis to conclude that individuals who are unvaccinated against COVID-19 satisfy the standard for distinctive. There are myriad reasons why an individual might not to be vaccinated. There will thus be "vast variations in attitudes, viewpoints, and experiences" within the relevant group. *United States v. Walsh*, 884 F. Supp. 2d 88, 92 (S.D.N.Y. 2012) (citation omitted and finding that individuals over the age of 70 do not constitute a distinctive group for fair cross-section purposes). Further, even assuming that all members of the unvaccinated group had a shared attitude regarding vaccination—a highly speculative assumption on this record, given that the group for example likely includes individuals who would like to be vaccinated but cannot be for medical reasons— membership in the unvaccinated group changes on a daily basis, and exclusion of the unvaccinated from the jury does not pose a danger of any partiality or bias against other unvaccinated individuals.

Moreover, in *Lockhart*, the Supreme Court found it highly relevant that the attribute at issue was "within the individual's control." 476 U.S. at 176. Whether or not to be

vaccinated is not an immutable characteristic, but an active choice made by a particular person for his or her own individual reasons. And, as in *Lockhart*, exclusion of the unvaccinated from the instant jury will "not prevent them from serving as jurors in other criminal cases, and thus leads to no substantial deprivation of their basic rights of citizenship." *Id*. The purposes of the fair cross-section requirement will not be impaired by limiting the jury in this case to individuals who have received a COVID-19 vaccine.

### C. Vaccination Status is not a Proxy for a Distinctive Group

The government has suggested that vaccination status may serve as a proxy for race, because "current data suggests that black citizens have comparatively lower vaccination rates." (Dkt. 268 at 2). However, the government has provided no meaningful analysis of that issue, merely citing to national and state data tracking websites that it concedes are incomplete. (*Id*.). This speculative assertion is insufficient to demonstrate a violation of the fair cross-section requirement.[3]  *See* 28 U.S.C. § 1867(d) (party claiming violation of the fair cross-section requirement must submit a "sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of [the JSSA]").

The government's contention that vaccination status is a proxy for "citizens of a particular point of view" (Dkt. 268 at 2) is no more persuasive. As explained above, the

---

[3] Even were the information maintained by New York State complete, it paints a complex story. In at least one county from which the jurors in this case will be called, it appears that African American citizens may actually be slightly overrepresented in the vaccinated population. *See* N.Y. State Dep't of Health, *Vaccine Demographic Info*., https://covid19vaccine.health.ny.gov/vaccine-demographic-data (last visited Oct. 11, 2021) (in Steuben County, African American citizens are 1.7% of the total population over the age of 15 but constitute 1.8% of those with at least one vaccine dose).

fair cross-section requirement is not concerned with mere shared attitudes about a given topic. *See Salamone,* 800 F.2d at 1219; *see also Lockhart*, 476 U.S. at 178 ("[I]f it were true that the Constitution required a certain mix of individual viewpoints on the jury, then trial judges would be required to undertake the Sisyphean task of 'balancing' juries, making sure that each contains the proper number of Democrats and Republicans, young persons and old persons, white-collar executives and blue-collar laborers, and so on."). In any event, the government has cited to no data whatsoever in support of the notion that vaccination status is tied to a particular point of view.

### D. No Procedural Violation of the JSSA will Occur

The Court further notes that the exclusion of unvaccinated jurors comports with the procedural requirements of the JSSA. In particular, the JSSA allows the Court to exclude any person whose "service as a juror would be likely to disrupt the proceedings[.]" 28 U.S.C. § 1866(c)(2). There are numerous reasons why the presence of an unvaccinated juror is likely to disrupt the proceedings in this specific case. As set forth above, there is currently a high level of community transmission of the virus that causes COVID-19 in all nine of the counties from which the jurors in this case will be called. Unvaccinated jurors are substantially more likely to contract COVID-19 and to spread it to other people present in the courtroom. *See* Ctrs. for Disease Control and Prevention, *Delta Variant: What We Know About the Science*, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html/ (last visited October 11, 2021) ("The greatest risk of transmission is among unvaccinated people who are much more likely to get infected, and therefore transmit the virus. . . . Fully vaccinated people with Delta variant breakthrough infections can spread

the virus to others. However, vaccinated people appear to spread the virus for a shorter time."). The safety of the other jurors, members of the public, and its staff are of course of the utmost importance to the Court.

Moreover, as discussed above, if an unvaccinated juror were to be exposed to a COVID-19-positive person at any point during the lengthy trial in this case, that juror would be lawfully required to quarantine for ten days. No such quarantine requirement exists for vaccinated individuals. As a result of the COVID-19 pandemic, this District (like many others across the country) has a staggering backlog of jury trials that are ready to proceed. It would cause massive disruption not just to the instant trial but to other trials scheduled to proceed in the Rochester courthouse if the Court was required to manage multiple mandated quarantines.

To be clear, the Court does not conclude that the presence of unvaccinated jurors would present a substantial risk of disruption in every case and under all circumstances. However, given the anticipated length of this trial and the high levels of community transmission currently present in the relevant counties, combined with the fact that the size and configuration of the courtroom in which the trial of this matter is to be held do not allow for social distancing, such a risk is present here.

IV.   **CONCLUSION**

For the foregoing reasons, the Court finds that limiting the jury to vaccinated individuals will not violate either the Sixth Amendment or the JSSA. In light of this conclusion, coupled with Defendant's waiver of any fair cross-section challenge, the Court will excuse all unvaccinated prospective jurors in this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  October 12, 2021
        Rochester, New York