UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

            v.

GEORGE MOSES,

            Defendant.

**DECISION AND ORDER**

6:19-CR-06074 EAW

## I.  <u>BACKGROUND</u>

On April 1, 2019, Adam McFadden ("McFadden") pled guilty before the undersigned to a two-count information charging him with wire fraud and filing false tax returns. *United States v. McFadden*, No. 19-cr-6039, Dkt. 15 (W.D.N.Y. Apr. 1, 2019). The plea agreement contained a cooperation provision requiring McFadden to provide the government complete and truthful information regarding criminal activity by himself and others and to testify truthfully and completely at all proceedings deemed necessary by the government.  The cooperation provision further provides that if the government, in its sole discretion, determines that McFadden has provided substantial assistance in another investigation or prosecution, it will move the Court for a downward sentencing departure pursuant to U.S.S.G. § 5K1.1.  The cooperation provision makes clear that it is ultimately the Court's decision whether and to what extent to grant a downward departure.  At the request of the parties, the Court sealed the cooperation provision in the plea agreement and allowed for redaction of the publicly-filed version thereof.  The Court further sealed the portion of the plea hearing transcript wherein the cooperation provision was discussed.

- 1 -

The publicly-filed transcript of the plea hearing notes that a portion of the transcript has been sealed by order of the Court.  *United States v. McFadden*, No. 19-cr-6039, Dkt. 16 at 17 (W.D.N.Y. Apr. 8, 2019).

Just over six months later, on October 9, 2019, McFadden again appeared before the undersigned and pled guilty to a one-count information charging him with wire fraud. *United States v. McFadden*, No. 19-cr-6166, Dkt. 7 (W.D.N.Y. Oct. 9, 2019).  Again, the plea agreement contained a cooperation provision that was sealed and redacted from the publicly-filed version of the plea agreement.  The Court again sealed the portion of the publicly-filed transcript of the plea hearing at which the cooperation agreement was discussed.  The publicly-filed plea hearing transcript notes that a discussion was held on the record at sidebar that is not reflected in the transcript.  *United States v. McFadden*, No. 19-cr-6166, Dkt. 6 at 15 (W.D.N.Y. Oct. 10, 2019).

Over two years later, on November 10, 2021, the government called McFadden as a witness at the jury trial in the instant matter.  After completion of the direct and cross-examinations of McFadden, the government alerted the Court that there was an issue with the information that had been provided to the defense regarding his pleas.  (Dkt. 350 at 163).  Specifically, the government advised the Court it had realized it might not have provided to the defense the complete plea agreements (as opposed to the redacted versions with the cooperation provisions omitted).  (*Id*.).  Defense counsel stated that they had not previously seen the complete plea agreements with the cooperation provisions and moved to strike McFadden's testimony.  (*Id*. at 165-67).  The Court then adjourned the trial for

- 2 -

the rest of the day to allow for briefing of the issue.  (*Id*. at 170).[1]  Later that evening, the government confirmed via email that it had not previously turned over the complete plea agreements to Defendant but had now provided defense counsel with the unredacted copies of the plea agreements.

On November 11, 2021, Defendant filed a letter motion regarding the failure to turn over the complete plea agreements.  (Dkt. 351).  Defendant argues that the government has violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).  (*Id*.).  Defendant further expands the relief he is seeking to include: (1) granting of a mistrial and dismissal of the indictment; (2) alternatively, dismissal of the counts of the indictment as to which McFadden's testimony is directly relevant; or (3) alternatively, striking of McFadden's testimony and a curative instruction to the jury.  (*Id*. at 1-2).

The government filed a response to Defendant's letter motion at 12:00 p.m. on November 12, 2021.  (Dkt. 352).  Later that same day, the Court sent the parties an email[2] advising them that the Court intended to (1) reopen cross-examination to allow defense counsel to question McFadden regarding the cooperation provisions and (2) issue a curative instruction advising the jury that the reason defense counsel had not previously asked such

---

[1]     The issue arose during the afternoon of Wednesday, November 10, 2021.  The trial was already scheduled to be off the following day, Veterans Day, as well as the next day, so the adjournment did not alter the previously-announced plan to adjourn on November 10, 2021, until Monday, November 15, 2021.

[2]     After reviewing the parties' submissions and considering the matter, the undersigned sent an email to counsel advising as to how it intended to resolve the issue, at 2:19 p.m. on November 12, 2021.  The undersigned further indicated that it would memorialize its reasoning in further detail in a decision.

questions is because the government did not turn over the complete plea agreements at the appropriate time.[3]  This Decision and Order memorializes the Court's reasoning for its resolution of this matter.

## II.   **<u>DISCUSSION</u>**

"To establish a *Brady* violation, '[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'"  *United States v. Gil*, 297 F.3d 93, 101 (2d Cir. 2002) (alteration in original and quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)); *see also United States v. Frank*, 11 F. Supp. 2d 322, 325 (S.D.N.Y. 1998) ("[Impeachment] material falls under the umbrella of the *Brady* rule because impeachment material directly affects the credibility of a witness and the 'reliability of a given witness may well be determinative of guilt or innocence.'"  (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)).  It is well-established that a cooperation agreement is impeachment material for purposes of the *Brady* inquiry.  *See Giglio*, 405 U.S. at 155.  The government further "does not contest that the cooperation provisions in Mr. McFadden's plea agreements fall within the scope of *Giglio* . . . and should have been turned over sooner."  (Dkt. 352 at 10).  Accordingly, the first element necessary to find a *Brady* violation is satisfied.

---

[3]     The undersigned provided counsel the proposed curative instruction it intended to provide to the jury in the email sent on November 12, 2021.  This prompted a further email exchange among counsel concerning the language in that instruction.  The Court will address the details of the curative instruction on Monday morning (November 15, 2021), before the trial recommences.

As to the second element, there is an at least colorable argument that the cooperation provisions in this matter were not "suppressed" for purposes of the *Brady* inquiry. "[E]vidence is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence." *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995) (quotation and alteration omitted); *see also Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) ("[I]f a reasonable defendant . . . should have known the relevant facts, then the prosecution's failure to disclose that evidence does not implicate *Brady*.").

Here, arguably, defense counsel should have known from the publicly-available information that McFadden had a cooperation agreement.[4] As set forth above, the publicly-available plea transcripts in both of McFadden's criminal cases made it plain that a portion of the discussion had been sealed. Further, the government's motion to seal was publicly filed in Criminal Action No. 19-cr-6039 at Docket 10, and there was a sealed document filed at the same time as the publicly-filed version of the plea agreement. McFadden's sentencing was also repeatedly adjourned, which the local news media reported, noting that it was "a sign that he may provide testimony against his alleged fraud co-conspirator, George Moses," because "federal sentencing is often delayed for a criminal who has agreed

---

[4]     The Court notes that counsel for the severed co-defendant in this case (Michael J. Tallon, Esq., representing co-defendant Janis White), specifically reached out to the Court in advance of his client's scheduled trial and arranged for production of the sealed portion of at least one of McFadden's plea transcripts. This demonstrates that uncovering the sealed nature of McFadden's pleas was at least possible. Mr. Tallon's client ultimately pleaded guilty in advance of her scheduled trial.

to assist the prosecution of an alleged criminal ally."  Gary Craig, *Former City Council VP Adam McFadden Could Testify Against Co-conspirator George Moses in Fraud Case*, DEMOCRAT AND CHRONICLE (Feb. 6, 2020), https://www.democratandchronicle.com/story /2020/02/06/adam-mcfadden-could-testify-against-george-moses-in-fraud-case-rochester-ny/4667498002/.

Had the complete plea transcripts and/or plea agreements been filed publicly, the Court would conclude that no suppression had occurred in this case.  *See United States v. Willis*, 997 F.2d 407, 411 (8th Cir. 1993) (finding no *Brady* violation where the government failed to turn over the complete plea agreement of cooperating witness, because the plea agreement had been filed with the district court, the defendant knew the witness had entered into a plea agreement and "[c]ounsel . . . surely must have expected that [the cooperating witness], as a coconspirator, would play a substantial part in the government's case at [the defendant's] trial" and thus could not "complain that he did not investigate a coconspirator's criminal court file in the same case to locate items with which to impeach the coconspirator"); *see also Payne*, 6 F.3d at 1208 ("Documents that are part of public records are not deemed suppressed if defense counsel should know of them and fails to obtain them because of lack of diligence in his own investigation."); *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993) (holding that information regarding scope of witness's cooperation was not suppressed within meaning of *Brady* because the defendant "was . . . aware that the issue of the extent of [the defendant's] cooperation may have warranted some additional investigation").

However, the publicly-available documents in this case did not explicitly state that McFadden had a cooperation agreement (even if it was a reasonable inference to draw), the government turned over to the defense incomplete copies of the plea agreements, and the Second Circuit has made it clear that there is "no duty upon a defendant, who was reasonably unaware of exculpatory information, to take affirmative steps to seek out and uncover such information in the possession of the prosecution in order to prevail under *Brady*." *Lewis*, 790 F.3d at 121. Further, the government concedes that it was obliged to turn over the complete plea agreements. The Court therefore concludes that the second element of a *Brady* violation is satisfied.

Accordingly, the Court turns to whether any prejudice has ensued. "Although there is no precise deadline for when the government is required to disclose *Brady* and *Giglio* material, [the Second Circuit has] held that *Brady* requires disclosure 'in time for its effective use at trial. . . .'" *United States v. Djibo*, 730 F. App'x 52, 56 (2d Cir. 2018) (quoting *United States v. Douglas*, 525 F.3d 225, 245 (2d Cir. 2008)); *see also United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001) ("[W]e have never interpreted due process of law as requiring more than that *Brady* material must be disclosed in time for its effective use at trial."). Here, the government does not contest that it should have produced the unredacted plea agreements in advance of trial. (*See* Dkt. 352 at 3, 10). However, the government argues that the cooperation provisions have been disclosed to the defense in sufficient time to allow for their effective use at trial and that accordingly no *Brady* violation has occurred. The Court agrees for the reasons that follow, with the caveat that the Court finds issuance of a curative instruction warranted.

- 7 -

While defense counsel did not have the cooperation provisions prior to the cross-examination of McFadden, they did have access to McFadden's proffer agreement with the government, which has many of the same terms as the cooperation agreements. In particular, the proffer agreement requires McFadden to provide "complete and truthful information regarding any and all criminal matters of which [he] may have knowledge" and reserves to the government "the sole discretion in evaluating the information and tangible objects" provided by McFadden and "in deciding what benefit, if any, should be afforded to [McFadden] in return for that information and tangible objects[.]"

Defense counsel extensively questioned McFadden about his proffer agreement on cross-examination, referring to McFadden's "cooperation" with the government and repeatedly pressing him on the benefit he was hoping to obtain at the time of sentencing by providing testimony favorable to the government. (*See* Dkt. 350 at 85-86 ("And you signed an agreement with the government, proffer agreement, . . . the letter does state that any benefit to the government will be determined by the government, am I correct, sir?"), 87 ("So as you sit here now facing the possibility of many, many years in jail and under the Guidelines, possibility of two to three years understanding it's up to the judge to do the sentencing. You were hoping, sir, that the government will give you a benefit by the cooperation that you're giving to the government, right, sir?"), 88 ("Now, my question is, sir, the letter you signed referred to the government determining what benefit to give you. You signed that letter, correct, sir?"), 136 ("And Mr. McFadden, as you testify here facing the prospect of many years in jail and having signed the proffer agreement, you are hoping the government will go to bat for you, aren't you, sir, at the time of sentencing?"; "And

that letter that you signed with the proffer states that the government can decide in its discretion what benefit to give to you, am I right, sir?"; "And you understand the government here is trying to convict George Moses, right?").

On the record before it, the Court does not find defense counsel's assertion that the cross-examination of McFadden would have been materially different had they been aware of the cooperation provisions plausible. The cooperation provisions are consistent with and support the precise theory that defense counsel pursued on cross-examination—that McFadden's testimony is not to be trusted because he is seeking to curry favor with the government for his own benefit.

The Court finds the analysis in *Gonzalez v. Ercole*, No. 08 CIV. 403, 2011 WL 5924443, at *21 (S.D.N.Y. Sept. 22, 2011), *adopted*, 2011 WL 5924431 (S.D.N.Y. Nov. 28, 2011), persuasive. There, the prosecution, in a "discovery oversight," failed to turn over a letter authored by a cooperating witness until "after cross-examination of [the cooperating witness] had already begun." *Id*. at *21. The court found that the late disclosure of the letter did not amount to a *Brady* violation because defense counsel was aware that the witness was cooperating and had already attempted to discredit the witness on that basis, and the letter "aligned effectively with this original strategy." *Id*.; *see also United States v. Rodriguez*, 538 F. Supp. 2d 674, 679 (S.D.N.Y. 2008) (finding no *Brady* violation where information regarding witness's lies during initial proffer session was not disclosed until during witness's direct examination, because "disclosure that [the witness] initially lied to the Government supported [the] defense and did not in any way introduce a new strategy requiring additional investigation"), *aff'd*, 332 F. App'x 716 (2d Cir. 2009).

- 9 -

Similarly, in this case, the cooperation provisions are entirely consistent with the strategy adopted by defense counsel with respect to McFadden.  The impeachment value of the cooperation provisions can thus be fully realized by allowing defense counsel to reopen cross-examination.

The Court further rejects Defendant's argument that the government incurably misled the jury regarding McFadden's incentives.  (*See* Dkt. 351 at 5).  Initially, while Defendant seems to insinuate that the government intentionally withheld the cooperation provisions, the Court credits the government's explanation that the failure to produce the complete plea agreements was an unfortunate—but inadvertent—error.  The government has offered a plausible explanation for how it failed to produce the unredacted plea agreements.  Indeed, the record fully supports a conclusion that the Assistant United States Attorney conducting the direct examination of McFadden did not know that his plea agreements contained cooperation provisions.  The failure to produce the cooperation provisions was a mistake—certainly one that should not have occurred—but nonetheless a mistake.  There was no willful misconduct on the part of the prosecution.

Further, the "misimpressions" identified by defense counsel (*see* Dkt. 351 at 4-5) are merely their subjective interpretations of the information presented on direct examination.  At no time was it conveyed to the jury that McFadden did not have a cooperation agreement.  Those questions were never asked on either direct or cross-examination.  Moreover, and in any event, reopening cross-examination will afford defense counsel the opportunity to correct any misimpressions they believe have been created.  The Court is not persuaded by Defendant's contention that because the trial was not in session

on Thursday and Friday, the jurors' perceptions of McFadden have been so fixed that they cannot be shaken by additional cross-examination.  (*See id*. at 9).  The Court notes that had the government taken longer with direct examination, the jurors would have had the same amount of time to reflect on McFadden's testimony without the benefit of any cross-examination whatsoever.  The jury has been repeatedly and firmly admonished about the importance of keeping an open mind until the proof is completed, and the Court has no reason to believe they will not comply with this instruction.

The Court further rejects the notion that Defendant's opportunity for confrontation has somehow been impaired by the delay in disclosing the complete plea agreements.  In this regard, the Court notes that the usual "remedy for a *Brady* violation is vacatur of the judgment of conviction and a new trial in which the defendant now has the *Brady* material available."  *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014).  Defendant's contention that his right of confrontation has been irreparably damaged because "Mr. McFadden now knows the questions he will be asked and has committed himself to his answers" (Dkt. 351 at 9) is inconsistent with this well-established proposition.  Defendant has had the opportunity to cross-examine McFadden and will be given a further opportunity to do so with the benefit of the impeachment material at issue, in full satisfaction of his confrontation right.

Additionally, while defense counsel suggests that the opening statement might have been different in some unspecified way had they been aware of the cooperation provisions

(*see id.*), as noted above, the cooperation provisions are fully consistent with Defendant's established case strategy.  The Court does not find this vague argument persuasive.[5]

The Court does agree with defense counsel that it could be confusing for the jury, and cause the jury to question defense counsel's competence and/or strategy, if cross-examination is merely reopened without explanation.  (*See id.*).  However, the Court finds that any such potential confusion can be obviated by a curative instruction advising the jury that the reason defense counsel did not previously question McFadden about the cooperation provisions is because the government did not turn over the complete plea agreements at the appropriate time.  As noted above, because of the disagreement concerning the terms of that curative instruction, the Court will address the details with counsel prior to the reopening of the cross-examination of McFadden.

In sum, because the Court finds that any potential prejudice can be remedied so as to allow the effective use of the cooperation provisions at trial, the Court finds that no

---

[5]     Defense counsel's opening reflected the defense theory that witnesses who will testify against Defendant are not worthy of belief, regardless of whether they have formal cooperation agreements with the government.  (*See* Dkt. 292 at 65 ("[T]he witnesses you will see are witnesses, in significant parts of the case, or just, no other way to put it, lying.  The witnesses made deals with the government.  The witnesses, even if they haven't made dealings with the government, they will totally lack credibility and they will be shown to be of demonstrable unreliability in the case.")).  Because of this attack during the defense opening, the Court agrees with the government that the direct examination of McFadden did not include improper bolstering (*see* Dkt. 352 at 4 n.2)—an objection that was not made by defense counsel at the time of McFadden's direct examination but one that they now advance (*see* Dkt. 351 at 5 n.2).  *See United States v. Cosentino*, 844 F.2d 30, 33 (2d Cir. 1988) ("If the opening sufficiently implicates the credibility of a government witness, we have held that testimonial evidence of bolstering aspects of a cooperation agreement may be introduced for rehabilitative purposes during direct examination.  In such a situation the 'rehabilitation' stage has already been reached on direct." (internal citations omitted)).

*Brady* violation has occurred, and that the relief sought by Defendant is accordingly not warranted.  In particular, the Court finds no basis to grant a mistrial.  Trial court judges "may declare a mistrial whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for doing so."  *Renico v. Lett*, 559 U.S. 766, 773-74 (2010) (internal quotation marks omitted).  "The decision to declare a mistrial is left to the sound discretion of the judge, but the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes."  *Id.* (internal quotation marks omitted).  "[A] mistrial is warranted only upon a showing of actual prejudice."  *United States v. Gaskin*, 364 F.3d 438, 463 (2d Cir. 2004).  Here, no actual prejudice has occurred because Defendant can still make effective use of the late-disclosed impeachment material.  There is no necessity for a mistrial under these circumstances.

The Court further does not find any basis to dismiss the indictment or any part thereof.  Dismissal of an indictment for a *Brady* violation "is an extreme sanction and a drastic remedy . . . appropriate only when it is otherwise impossible to restore a criminal defendant to the position that he would have occupied vis-a-vis the prosecutor, or when there is a widespread or continuous pattern of prosecutorial misconduct."  *United States v. Halloran*, 821 F.3d 321, 342 n.14 (2d Cir. 2016) (quotations and citation omitted).  This is not a case in which such an extreme and drastic remedy is warranted.  While the Court does not condone the government's failure to turn over the complete plea agreements, the inadvertent error in this case does not even approach the kind of conduct necessary to support dismissal as a remedy.  Further, as discussed above, the nature of the late-disclosed

- 13 -

material and the stage of the proceedings are such that any potential prejudice to Defendant can be obviated.

Finally, the Court does not find it necessary to strike McFadden's testimony.  As discussed above, to the extent that the jury has been left with any misimpressions regarding the relationship between McFadden and the government, those misimpressions can be remedied on continued cross-examination, where defense counsel will have the full benefit of the cooperation provisions.  This case is therefore unlike *United States v. Riley*, 189 F.3d 802 (9th Cir. 1999)—cited by Defendant—in which the materials at issue had been destroyed and could not be reconstructed, *id*. at 806.  Because more narrow remedial measures can ensure Defendant a full and fair opportunity to make effective use of the impeachment material at issue, striking McFadden's testimony is not warranted. *See id.* at 807 (explaining that "more limited sanctions than striking the witness's testimony might be appropriate in some other circumstances" where recalling the witness "could cure the problem").

## III.   CONCLUSION

For all the reasons set forth above, the Court denies Defendant's motion for a mistrial and for dismissal of the indictment in whole or in part.  The Court further denies Defendant's request that it strike McFadden's testimony.  Instead, the Court finds that any potential *Brady* violation can be avoided by reopening cross-examination and issuing a curative instruction explaining the reasoning for the reopening of cross-examination.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      November 14, 2021
            Rochester, New York