UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

UNITED STATES OF AMERICA,                           **DECISION AND ORDER**

          v.                                                      6:19-cr-06074 EAW

GEORGE MOSES,

              Defendant.

———————————————————

Defendant George Moses ("Defendant") has filed a counseled motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. 470). For the reasons below, the motion is denied.

## I.      **BACKGROUND**

Defendant, who is 56 years old, was charged by way of a Fifth Superseding Indictment returned on August 27, 2020, with 32 counts of mail and wire fraud, conspiracy to commit the same, money laundering, federal program bribery and theft, tampering with documents, false statements, and filing false income tax returns. (Dkt. 123). The charges alleged that Defendant, the former Chairman of the Rochester Housing Authority ("RHA") and executive director of the North East Area Development Inc. ("NEAD"), engaged in several schemes to fraudulently defraud the Dormitory Authority of the State of New York, Rochester Housing Charities (a not-for-profit created by RHA), NEAD, and another not-for-profit organization (Quad A For Kids). Defendant was also charged with tax fraud for calendar years 2014 through 2019, and making false statements to the FBI.

A trial commenced with jury selection on October 12, 2021 (Dkt. 278), and concluded on November 30, 2021, when the jury returned a verdict finding Defendant guilty on 28 counts (Dkt. 376; Dkt. 380).  On November 29, 2022, the undersigned sentenced Defendant to a within-Guidelines aggregate prison sentence of 78 months to be followed by three years of supervised release.  (Dkt. 454; Dkt. 461).  On July 26, 2024, the Second Circuit affirmed Defendant's conviction and sentence.  (Dkt. 468).

Defendant is housed within the Bureau of Prisons ("BOP") at USP Canaan with a scheduled release date of July 18, 2026.  *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Feb. 26, 2025).[1]  According to a letter from Defendant's case manager dated September 12, 2024, he had served about 50.3% of his 78-month sentence with no disciplinary infractions.  (Dkt. 480).  According to the United States Probation Office ("USPO"), as of January 16, 2025, Defendant had served about 37 months in custody.  (Dkt. 475 at 1).

Defendant argues that his sentence should be modified because of extraordinary and compelling reasons based on the following: (1) the warden at USP Canaan has recommended Defendant for release to a halfway house on February 13, 2025, under the First Step Act, but he will not be released until a bed at a halfway house is available in September 2025 (Dkt. 470-2 at 2); and (2) Defendant suffered an injury while incarcerated

---

[1]     According to a submission from the government, if Defendant continues to earn credits under the First Step Act, his release date will advance to June 13, 2026.  (Dkt. 478 at 2).

on March 5, 2024, requiring emergency surgery, and Defendant has not been provided the recommended physical and occupational therapy while incarcerated (*id*. at 2-8; 9-10).

Both the government and the USPO oppose the pending motion.  (Dkt. 472; Dkt. 475).  According to the USPO, Defendant has been recommended for placement at a halfway house because of the First Step Act, and not because of his current medical condition.  (Dkt. 475 at 1).  Furthermore, according to both the USPO and the government, Defendant's release date from prison to a halfway house is scheduled for September 18, 2025—not February 13, 2025.  (Dkt. 478 at 2).

## II.     LEGAL STANDARD AND ANALYSIS

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020).  The compassionate release statute, as amended by the First Step Act, is such a statutory exception, and provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the [BOP] . . ., or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] . . . to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).  Relief is appropriate under § 3582(c)(1)(A) when the following conditions are met: (1) the exhaustion requirement of the statute is satisfied;[2] (2) extraordinary and compelling reasons warrant a reduction of the prison sentence; (3) the factors set forth at 18 U.S.C. § 3553(a) support modification of the prison term; and (4) the reduction is consistent with the policy statement set forth at U.S.S.G. § 1B1.13.  If any "one of those conditions is lacking, [the district court] need not address the remaining ones." *United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021).[3]  "The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute." *United States v. Roney*, No. 10-CR-130S, 2020 WL 2846946, at *2 (W.D.N.Y. June 2, 2020), *aff'd*, 833 F. App'x 850 (2d Cir. 2020); *see also United States v. Fernandez*, 104 F.4th 420, 427 (2d Cir. 2024) ("The burden of showing that the circumstances warrant a sentence reduction is on the defendant.").

U.S.S.G. § 1B1.13(b)(1) sets forth the medical circumstances of a defendant that can constitute extraordinary and compelling reasons:

(A)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B)  The defendant is--

---

[2]     The government does not dispute that the exhaustion requirement has been satisfied. (*See* Dkt. 470-3).

[3]     At the time the Second Circuit decided *Keitt*, the policy statement set forth at U.S.S.G. § 1B1.13 did not apply to motions for compassionate release filed before a district court.  21 F.4th at 71 n.2.  But with the November 1, 2023 amendments to the Sentencing Guidelines, that policy statement is now relevant to a motion filed in district court.

- 4 -

(i) suffering from a serious physical or medical condition,

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C)  The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D)  The defendant presents the following circumstances—

(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

The undersigned has scrutinized the medical records submitted by Defendant in support of his pending motion—including the updated records as requested by the Court[4]—and concludes that Defendant has not established that his medical condition constitutes extraordinary and compelling reasons for a sentence reduction.

The warden's letter dated April 25, 2024, denying Defendant's request for compassionate release, concluded, among other things, that Defendant "is able to care for

---

[4]     As noted in the Court's Text Order entered January 28, 2025 (Dkt. 477), the most recent medical records originally submitted by Defendant ended on September 18, 2024, and accordingly the Court requested updated records that Defendant provided through January 16, 2025 (*See* Dkt. 479).

his daily needs, and he is not confined to a bed or wheelchair for greater than fifty percent of [his] waking hours." (Dkt. 470-3). And in an encounter dated October 21, 2024, the medical record indicates that Defendant has "significantly recovered from injury and is able to perform [activities of daily living] with no limits". (Dkt. 479-1 at 19). Although Defendant's counsel argues that the note was not made by a doctor, the medical record reflects that two separate medical doctors reviewed and co-signed the record made by a certified registered nurse practitioner. (*Id*. at 20-21).

Under the circumstances, and again in consideration of the definitions set forth at U.S.S.G. § 1B1.13(b)(1) and the information contained in Defendant's medical records, the Court concludes that he has not established extraordinary and compelling reasons for a reduction in his sentence based on his medical condition. Although Defendant suffered a serious injury requiring surgery about one year ago, he has failed to establish that he meets any of the qualifying medical circumstances set forth in U.S.S.G. § 1B1.13(b)(1). Defendant has not established that he is suffering from a terminal illness, U.S.S.G. § 1B1.13(b)(1)(A); he has not established that he is suffering from a condition or impairment that "substantially diminishes" his ability to provide self-care and from which he is not expected to recover (in fact, the most recent medical records indicate the opposite), *id*. § 1B1.13(b)(1)(B); he has not established that he is suffering from a medical condition requiring long-term or specialized medical care that is not being provided "and without which the defendant is at risk of serious deterioration in health or death," *id*. §

1B1.13(b)(1)(C);[5] and he has not established that a public health emergency exists that cannot be timely mitigated, *id*. § 1B1.13(b)(1)(D).

As for the argument that the unavailability of a bed in a halfway house creates the requisite extraordinary and compelling reasons, again the Court disagrees. First, it is not at all clear that Defendant would be released to a halfway house right now if a bed was available. There is documentation reflecting a mid-February date. (*See* Dkt. 470-4 at 1). On the other hand, the USPO and government suggest that the date is mid-September 2025. (Dkt. 478 at 2). But even if Defendant established that under the First Step Act he would be released from prison into a halfway house as of mid-February 2025, the Court does not view this as constituting exceptional reasons justifying this Court to modify Defendant's sentence. The BOP decision about prerelease custody in a halfway house under the First Step Act is an entirely different process that a sentencing court's decision as to the appropriate sentence that should be imposed. The Court concluded that a within-Guidelines 78-month prison sentence was appropriate. That the BOP has purportedly determined, after only half of that sentence being served, that Defendant should be serving

---

[5]     The Court believes the most applicable provision of U.S.S.G. § 1B1.13(b)(1) is subparagraph (C) and that it presents the closest question. In other words, the record seems to support Defendant's argument that he is not being provided physical and occupational therapy, and that type of treatment arguably constitutes "specialized medical care." U.S.S.G. § 1B1.13(b)(1)(C). But the provision also requires that a defendant show that he "is at risk of *serious deterioration in health* or death," *id*. at § 1B1.13(b)(1)(C), and the Court finds that Defendant has not met his burden to establish that—particularly given the recent medical record indicating that Defendant has "significantly recovered" (Dkt. 479-1 at 19).

that sentence in a halfway house does not create extraordinary and compelling reasons for a sentence reduction.

Perhaps more importantly, even if Defendant could establish extraordinary and compelling reasons, the Court would not grant the requested relief because the factors set forth at 18 U.S.C. § 3553(a) do not warrant granting Defendant's request. As the Court explained at sentencing, Defendant used his leadership positions within the community to engage in a brazen, pervasive, and repeated pattern of fraud to line his own pocket and finance a lavish lifestyle. Defendant's fraud permeated almost every aspect of his life, and his explanations for the expenditures were outrageous. The evidence at trial was overwhelming, and yet Defendant still to this day has never acknowledged the seriousness of his criminal conduct—or even that what he did was criminal. While Defendant also performed some good works throughout his life, his criminal behavior overwhelms any good that he performed. The vast majority of the monies that he stole were intended to help the most needy in this community. Defendant's conduct was not only criminal but morally repugnant. Defendant breached his positions of trust in an audacious manner that inflicted a collective and community harm outside of any financial detriment suffered by the victim organizations.

While it is truly unfortunate that Defendant suffered an injury while incarcerated, and the Court does not quarrel with the notion that the medical care that Defendant would likely receive outside of custody would be more effective than that received while incarcerated, that factor alone does not justify reducing the sentence imposed or granting compassionate release. To do so would undermine the purposes of the original sentence

and not be in the interests of justice. The Court remains concerned about Defendant's risk of recidivism once released, and based on the record as a whole, concludes that the § 3553(a) factors do not warrant a sentence reduction.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. 470) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:    March 3, 2025
          Rochester, New York